## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

HEATHER MARIE TANNER,    :    Civil No. 1:18-CV-1433
:
        **Plaintiff,**    :
:
  **v.**    :
:    **(Magistrate Judge Carlson)**
NANCY BERRYHILL,    :
**Acting Commissioner of Social**    :
**Security,**    :
:
        **Defendant.**    :

## MEMORANDUM OPINION

## I.    Introduction

Social Security Administrative Law Judges ("ALJs") are required to make a series of legal, medical, and factual judgments in the course of adjudicating disability claims. They perform this task against the backdrop of a five-step sequential analytical paradigm. Once the ALJ completes this task, it falls to the court to review these disability determinations. In evaluating Social Security appeals, we are enjoined to apply a deferential standard of review, which calls upon us simply to determine whether substantial evidence, a quantum of proof that is less than a preponderance but more than a scintilla of evidence, supports the ALJ's findings. Given the deferential standard of review that applies to Social Security appeals, which calls upon us simply to determine whether substantial evidence supports the

1

ALJ's findings, we conclude that substantial evidence exists in this case which justified the ALJ's decisions that led to the denial of this particular claim. Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner in this case.

## II.  Statement of Facts and of the Case

On August 19, 2015, Heather Tanner applied for disability benefits pursuant to Title II of the Social Security Act. (Tr. 13.)  In this application, Tanner alleged that she had become disabled beginning in July of 2014, (Tr. 13), as a result of the combined effects of obesity, degenerative disc disease, an ankle fracture, and asthma. (Tr. 16.)  Tanner was 31 years at the date of onset of her alleged disability. (Tr. 24.) She had completed high school and attended college for several years. (Tr. 93, 127.) Prior to the alleged onset of her disability, Tanner had worked as a driver, and had been employed by Geisinger in surgical services, cleaning operating theaters. (Tr. 35-36.)

In 2014 and 2015, Tanner experienced a series of mishaps that she alleged exacerbated her medical conditions, including suffering a fall at her work and later breaking her ankle. (Tr. 36.) Both of these injuries required surgery. (Id.) These ankle and back conditions, in combination with her obesity, constituted Tanner's primary medical impairments. With respect to these medical concerns, Tanner's

treatment records presented a mixed and equivocal picture. For example, as for Tanner's back condition, in August 2014, Tanner was seen by Dr. Andrew Freese for low back pain following a work accident. (Tr. 314-15.) This examination disclosed a limited lumbar region range of motion and an antalgic gait, but intact arm and leg tone and bulk, no significant leg weakness, and a positive straight leg raise test on the left leg but not right the right leg. (Id.) Freese then referred Tanner to Bruce H. Levin, M.D. for an initial pain management consultation in August 2014. (Tr. 194-97). This examination disclosed that Tanner had normal sensory findings for her right leg but sensory loss in her left leg; had 5-/5 right leg strength and 4-/5 left leg strength; had lumbar tenderness and delayed muscle relaxation; and had a positive straight leg raise test on the left leg but not the right leg. (Tr. 194.) Dr. Levin concluded that Tanner suffered from lumbar radiculopathy (Tr. 194), and provided her with a lumbar epidural steroid injection in September 2014. (Tr. 198.)

MRI testing in October 2014 conducted by the University of Pennsylvania confirmed that Tanner experienced disc disease, specifically, disc bulging and an annular fissure. (Tr. 201, 232-34.) While Tanner suffered from tenderness in her back, she had grossly intact spinal sensation, and her strength seemed unaffected. (Tr. 220, 237.) Accordingly, she was discharged after this testing, and her pain was well-controlled with medication. (Tr. 218-19.)

One month later, in November 2014, Tanner was treated at the Sunbury Community Hospital Emergency Department following an automobile accident. (Tr. 245-48.) At that time, medical records indicate that Tanner had normal back range of motion; grossly normal musculoskeletal/extremity examination findings, other than pain and tenderness in her left shin and shoulder and right arm; and grossly normal motor examination findings. (Tr. 246.)

In January and March 2015, Tanner continued to treat with Dr. Freese for her lumbar issues, and displayed limited lumbar region range of motion, decreased left leg sensation, positive left straight leg raise test, and an antalgic gait. (Tr. 311-12.) Consequently, Tanner underwent a lumbar fixation and fusion procedure in March of 2015. (Tr. 278-93.) Post-surgery, Tanner had normal arm and leg range of motion. (Tr. 283.) Dr. Freese conducted further follow-up appointments with Tanner from March through June 2015. (Tr. 307-10.) During this medical follow-up, it was reported that Tanner did quite well and participated in physical therapy. (Tr. 308-10.) By June of 2015, Tanner reported that her back and leg symptoms "significantly" improved and that she functioned better at home. (Tr. 307.) Tanner followed up with Dr. Freese again in September 2015, (Tr. 306), and Dr. Freese found that she "clearly benefited" from the surgery and was "quite pleased" with the

results. (Tr. 306.) At a November 2015 visit, Dr. Freese found that she had "done very well" post-lumbar surgery with significant improvement in her back pain. (Tr. 793.)

Tanner's medical records also revealed that she had experienced a broken ankle but had generally enjoyed a normal post-operative recovery from this injury. Thus, in September 2015, she was admitted to Evangelical Community Hospital due to a right ankle fracture after a fall, (Tr. 351-571), and underwent an open reduction internal fixation procedure. (Tr. 366, 691-93.) Tanner was discharged two days later, (Tr. 351), and from October 2015 through May 2016, followed up with Sun Orthopedic for post-surgery care. (Tr. 681-83, 685-90, 843-50.) While Tanner had some continuing pain and used a cane, (Tr. 689, 844, 848), treatment records indicate that that she was healing well and had good x-ray results. (Tr. 682, 686, 844.) By March 2016, it was reported that Tanner could tolerate her normal work duties. (Tr. 848.) After Tanner experienced several ankle sprains in the Summer and Fall of 2016, she discussed her employment prospects with her treating physician, who opined that she could do her prior work as a delivery person but recommended that she try some type of more appropriate work. (Tr. 884.)

Finally, Tanner's medical records from 2014 through 2016 documented that she suffered from obesity. Tanner was 5 feet 4 inches tall, weighed in excess of 300

pounds, and had BMIs ranging from 54.93 to 56.9. While her medical history documented this obesity, for the most part these records did not indicate any acute distress on Tanner's part attributable to this medical condition. (Tr. 799, 802, 806, 810, 814, 817-18, 820, 824, 827.)

Based upon these clinical records, in December of 2015, two physicians opined that Tanner retained the ability to perform work, albeit work of a less strenuous nature than her prior employment. First, a consulting examining source, Dr. Justine Magurno, completed a December 4, 2015 report describing the result of Tanner's physical examination and addressing her ability to do work-related activities. (Tr. 669-78). Dr. Magurno opined that Tanner could frequently lift and/or carry 10 pounds; could sit for 6 hours and stand and/or walk for 1 hour each during an 8-hour workday; (Tr. 670), but found that Tanner needed to use a cane to ambulate. (Tr. 670.) In Dr. Magurno's opinion, Tanner could continuously reach, handle, finger, feel, push, and pull; (Tr. 671), could frequently operate foot controls with her left foot but never with her right foot; (Tr. 671), and could frequently stoop; occasionally kneel and crawl; but never balance, crouch, or climb ladders, scaffolds, stairs, or ramps. (Tr. 672.) Dr. Magurno further opined that Tanner could continuously operate a motor vehicle, but should avoid other workplace hazards (Tr. 673).

After reviewing Dr. Magurno's examination report and Tanner's other medical records, a state agency expert, Dr. Catherine Smith, reported on December 15, 2015, that Tanner could lift and/or carry 20 pounds occasionally and 10 pounds frequently, and could stand and/or walk and sit for 6 hours each in an 8-hour workday (Tr. 56). Dr. Smith further concluded that Tanner had limited right leg pushing and pulling, (Tr. 56-57), found that Tanner could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, and could never climb ladders, ropes, or scaffolds, (Tr. 57) but concluded that Tanner should avoid concentrated exposure to extreme cold, wetness, and work hazards. (Tr. 57-58.)[1]

It was against the factual and medical backdrop that the ALJ conducted a hearing into Tanner's disability application on November 1, 2017. (Tr. 30-48.) Tanner and a Vocational Expert both appeared and testified at this hearing. (Id.) In

---

[1] The only countervailing medical opinion evidence was an October 2016 Pennsylvania Department of Human Services Assessment Form that a treating physician assistant completed for Tanner, (Tr. 851-52), which opined that Tanner was permanently disabled due to morbid obesity, knee degenerative joint disease, and asthma. (Tr. 852.) On appeal, Tanner does not challenge the ALJ's decision to give greater weight to the physician medical opinions of Dr. Magurno and Dr. Smith than to this physician assistant's report.

the course of this testimony, the ALJ took into account Tanner's use of a cane, and

posed the following hypothetical question to the Vocational Expert:

> I'd like you to assume we're talking about an individual of this claimant's age, education, and past work history. Further, assume the individual is capable of performing a range of sedentary work that is unskilled in nature with no detailed instructions, confined to routine, repetitive tasks, performed in a clean and temperate environment. The work should afford the opportunity to occasionally alternate positions. It should accommodate the use of a cane for ambulation. It should not involve right foot control operation, nor climbing, balancing, nor exposure to heights, ladders or hazards.

(R. 45-46.) In response, the Vocational Expert identified a series of jobs in the

regional and national economy that met these specifications and accommodated use

of a cane at work. (Tr. 46-47.)

Following this hearing, on January 2, 2018, the ALJ issued a decision denying

Tanner's application for disability benefits. (Tr. 10-25.) In this decision, the ALJ

first found that Tanner met the insured requirements of the Act, (Tr. 16), and then at

Step 2 of the five-step sequential analysis process that applies to Social Security

disability claims, found that Tanner's obesity, ankle fracture and degenerative disc

disease were all severe impairments. (Id.) The ALJ also found that none of Tanner's

impairments met the criteria of a Social Security listing which would have prescribed

Tanner as *per se* disabled. (Tr. 17-19.)

The ALJ then concluded that Tanner "has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a). The claimant must be afforded the opportunity to occasionally alternate positions and use a cane for ambulation. She cannot operate foot controls with the right lower extremity and she should work in a clean and temperate environment. She cannot perform work that involves climbing, balancing, heights, ladders, or work around hazards. She is limited to unskilled work involving only routine and repetitive tasks with no detailed instructions." (Tr. 19.) In reaching this conclusion, the ALJ expressly:

> [C]onsidered the claimant's obesity in evaluating her residual functional capacity. Although obesity has been deleted from the listing of impairments . . ., obesity is to be considered in assessing the claimant's functional capacity and its effect on the other impairments (SSR-02-1P). Here, the record reflects that the claimant weighs 328 pounds and stands 5 '4" tall, resulting in a BMI of 58. . . . The claimant describes symptoms reasonably attributable to her obese state. The undersigned administrative law judge has given due consideration to the claimant's obesity in assessing the claimant's residual functional capacity and, in this case, limiting the claimant to the performance of sedentary work.

(Tr. 18-19.)

The ALJ's decision then recounted the various treatment notations which alluded to Tanner's weight and obesity, (Tr. 21-22), but found that: "Considering the claimant's combination of impairments in conjunction with her obesity, a reduction to a range of sedentary exertion work is appropriate and supported by the record." (Tr. 22.)

The ALJ also took into account Tanner's claims of totally disabling pain, but concluded that her assertions were not fully supported by the medical records. (Tr. 20.) As the ALJ observed, those medical records revealed fairly benign findings and described successful surgical interventions that had yielded positive medical outcomes. (Tr. 20-22.) Moreover, the medical opinion evidence largely indicated that Tanner could perform a limited range of sedentary work. (Id.) Thus, the ALJ concluded that:

> While the claimant has severe impairments, the residual functional capacity above accommodates the claimant's severe impairments by limiting her to the sedentary exertion capacity. The residual functional capacity further adds a sit/stand option, use of a cane, right lower extremity, postural and environmental restrictions for her comfort and to guard against any exacerbations of her conditions.

(Tr. 22.)

Having made these findings, the ALJ determined at Step 4 of this sequential analysis that Tanner could not return to her past employment, (Tr. 23-4), but found at Step 5 that she retained the ability to perform other sedentary work in the national economy. (Tr. 24-25.) Accordingly, the ALJ concluded that Tanner had not met the exacting standards of disability prescribed by law and denied her claim for these disability benefits. (Tr. 25.)

This appeal followed. (Doc. 1.) On appeal, Tanner challenges this ALJ decision on a number of grounds, arguing in particular that the ALJ erred in

consideration of her obesity; erred in the evaluation of the severity of her symptoms; and should not have included the use of a cane in the RFC assessment or vocational hypothetical questions posed to the expert witness in this case.

This case is fully briefed and is, therefore, ripe for resolution. For the reasons set forth below, under the deferential standard of review that applies to this case, the ALJ's decision will be affirmed.

## II.    Discussion

### A.    Substantial Evidence Review – The Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. § 405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a

conflict created by the evidence. <u>Mason v. Shalala</u>, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." <u>Consolo v. Fed. Maritime Comm'n</u>, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." <u>Leslie v. Barnhart</u>, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. <u>See</u> <u>Arnold v. Colvin</u>, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); <u>Burton v. Schweiker</u>, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); <u>see also</u> <u>Wright v. Sullivan</u>, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); <u>Ficca</u>, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues....").

Several fundamental legal propositions flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements ... are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that

decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

**B.**    **Initial Burdens of Proof, Persuasion, and Articulation for the ALJ**

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant

is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. §1382c(a)(3)(H)(i)(incorporating 42 U.S.C. §423(d)(5) by reference); 20 C.F.R. §416.912; Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that

jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §416.912(f); <u>Mason</u>, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. <u>Id</u>. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." <u>Schaudeck v. Comm'r of Soc. Sec</u>., 181 F. 3d 429, 433 (3d Cir. 1999). Moreover, in conducting this review we are cautioned that "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.' <u>Walters v. Commissioner of Social Sec</u>., 127 F.3d 525, 531 (6th Cir.1997); <u>see also</u> Casias v. Secretary of Health & Human Servs.,

933 F.2d 799, 801 (10th Cir. 1991) ('We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.')." <u>Frazier v. Apfel</u>, No. 99-715, 2000 WL 288246, \*9 (E.D. Pa. March 7, 2000). Furthermore, in determining if the ALJ's decision is supported by substantial evidence, the court may not parse the record but rather must scrutinize the record as a whole. <u>Smith v. Califano</u>, 637 F.2d 968, 970 (3d Cir. 1981).

### C. <u>Legal Benchmarks for Analysis of Obesity Claims in Social Security Appeals</u>

The interplay between this deferential substantive standard of review, and the requirement that courts carefully assess whether an ALJ has met the standards of articulation required by law, is aptly illustrated by those cases which consider analysis of the compounding effect of obesity upon disability claimants. In this regard, the leading case addressing this issue is <u>Diaz v. Comm'r of Soc. Sec.</u>, 577 F.3d 500 (3d Cir. 2009). In <u>Diaz</u>, an ALJ found at Step 2 of the analytical process that Diaz's obesity was a severe impairment, but then neglected to address the exacerbating effect of this condition at Step 3 or in any other subsequent steps in the disability analysis.

On these facts, the Court of Appeals remanded the case for further consideration by the Commissioner and provided guidance regarding the duty of articulation required from ALJs in this setting. Thus, the Court of Appeals explained

that "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." Diaz, 577 F.3d at 504. While imposing this responsibility of articulation upon ALJs, the appellate court did not endeavor to impose some strict formulaic requirements upon these administrative adjudicators. Quite the contrary, the court made it clear that: "The ALJ, of course, need not employ particular 'magic' words: '[Case law] does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis.' " Diaz, 577 F.3d at 504 (citations omitted).

The Court of Appeals also made it abundantly clear that its decision related to the ALJ's duty to adequately articulate the rationale underlying any decision denying benefits and did not in any way alter the very deferential substantive standard of review in these cases. As the Court noted: "Were there *any* discussion of the combined effect of [obesity upon] Diaz's impairments, we might agree with the District Court [and affirm the ALJ decision]. However, absent analysis of the cumulative impact of Diaz's obesity and other impairments on her functional capabilities, we are at a loss in our reviewing function." Diaz, 577 F.3d at 504 (emphasis in original). By noting that "*any* discussion of the combined effect of [obesity upon] Diaz's impairments," would have been sufficient, the appellate court

underscored the continuing vitality of the deferential standard of review that applies in these cases.

Thus, fairly construed, <u>Diaz</u> holds that where an ALJ has defined a claimant's obesity as a severe impairment at Step 2 of this analysis, there is a basic duty of articulation that is owed the claimant, explaining how that obesity affects the issue of disability. However, once that duty of articulation is met, the substantive standard of review remains highly deferential. Applying this analytical paradigm, following <u>Diaz</u> it has been held that a single cursory assurance that an ALJ has considered a claimant's obesity may be insufficient to satisfy the requirement that "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." <u>Diaz,</u> 577 F.3d at 504; <u>see also</u> <u>Sutherland v. Berryhill</u>, No. 3:17-CV-00124, 2018 WL 2187795, at *9 (M.D. Pa. Mar. 6, 2018), <u>report and recommendation adopted sub nom.</u> <u>Sutherland v. Berryhill</u>, No. CV 3:17-0124, 2018 WL 2183359 (M.D. Pa. May 11, 2018). However, a statement by an ALJ in a decision denying benefits that the ALJ has "considered any additional and cumulative effects of obesity," when coupled with even a brief factual analysis of the medical evidence as it relates to obesity and impairment, is sufficient to satisfy this duty of articulation. <u>Cooper v. Comm'r of Soc. Sec.</u>, 563 F. App'x 904, 911 (3d

Cir. 2014). Further, when an ALJ considers the role of a claimant's obesity, evaluating it within the context of the overall record, consistent with the appropriate guidelines, this duty is satisfied. Woodson v. Comm'r Soc. Sec., 661 F. App'x 762, 765 (3d Cir. 2016). Finally, this responsibility is met when the ALJ explicitly considers the claimant's obesity when assessing that claimant's residual functional capacity. Hoyman v. Colvin, 606 F. App'x 678, 680 (3d Cir. 2015); Medina v. Berryhill, No. 3:17-CV-1941, 2018 WL 3433290, at *6–7 (M.D. Pa. June 8, 2018), report and recommendation adopted, No. CV 3:17-1941, 2018 WL 3426408 (M.D. Pa. July 16, 2018).

### D. **Legal Benchmarks for the ALJ's Assessment of a Claimant's Alleged Symptoms**

The interplay between the deferential substantive standard of review that governs Social Security appeals, and the requirement that courts carefully assess whether an ALJ has met the standards of articulation required by law, is also illustrated by those cases which consider analysis of a claimant's reported pain. When evaluating lay testimony regarding a claimant's reported degree of pain and disability, we are reminded that:

> [T]he ALJ must necessarily make certain credibility determinations, and this Court defers to the ALJ's assessment of credibility. See Diaz v. Comm'r, 577 F.3d 500, 506 (3d Cir.2009) ("In determining whether there is substantial evidence to support an administrative law judge's decision, we owe deference to his evaluation of the evidence [and]

20

assessment of the credibility of witnesses....”). However, the ALJ must specifically identify and explain what evidence he found not credible and why he found it not credible. Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir.1994) (citing Stewart v. Sec'y of Health, Education and Welfare, 714 F.2d 287, 290 (3d Cir.1983)); see also Stout v. Comm'r, 454 F.3d 1050, 1054 (9th Cir.2006) (stating that an ALJ is required to provide “specific reasons for rejecting lay testimony”). An ALJ cannot reject evidence for an incorrect or unsupported reason. Ray v. Astrue, 649 F.Supp.2d 391, 402 (E.D.Pa.2009) (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir.1993)).

Zirnsak v. Colvin, 777 F.3d 607, 612–13 (3d Cir. 2014).

Yet, it is also clear that:

Great weight is given to a claimant's subjective testimony only when it is supported by competent medical evidence. Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979); accord Snedeker v. Comm'r of Soc. Sec., 244 Fed.Appx. 470, 474 (3d Cir. 2007). An ALJ may reject a claimant's subjective testimony that is not found credible so long as there is an explanation for the rejection of the testimony. Social Security Ruling (“SSR”) 96–7p; Schaudeck v. Comm'r of Social Security, 181 F.3d 429, 433 (3d Cir. 1999). Where an ALJ finds that there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's pain or other symptoms, however, the severity of which is not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

McKean v. Colvin, 150 F. Supp. 3d 406, 415–16 (M.D. Pa. 2015) (footnotes omitted). Thus, we are instructed to review an ALJ's evaluation of a claimant's subjective reports of pain under a standard of review which is deferential with respect to the ALJ's well-articulated findings, but imposes a duty of clear

articulation upon the ALJ so that we may conduct meaningful review of the ALJ's conclusions.

In the same fashion that medical opinion evidence is evaluated, the Social Security Rulings and Regulations provide a framework under which the severity of a claimant's reported symptoms are to be considered. 20 C.F.R. §§ 404.1529, 416.929; SSR 16–3p. It is important to note that though the "statements of the individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 363 (3d. Cir. 2011) (referencing 20 C.F.R. §404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled."). It is well-settled in the Third Circuit that "[a]llegations of pain and other subjective symptoms must be supported by objective medical evidence." Hantraft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999) (referring to 20 C.F.R. § 404.1529). When evaluating a claimant's symptoms, the ALJ must follow a two-step process in which the ALJ resolves whether a medically determinable impairment could be the cause of the symptoms alleged by the claimant, and subsequently must evaluate the alleged symptoms in consideration of the record as a whole. SSR 16-3p.

First, symptoms, such as pain or fatigue, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an

underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16–3p. During the second step of this credibility assessment, the ALJ must determine whether the claimant's statements about the intensity, persistence or functionally limiting effects of his or her symptoms are substantiated based on the ALJ's evaluation of the entire case record. 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p. This includes, but is not limited to: medical signs and laboratory findings, diagnosis and other medical opinions provided by treating or examining sources, and other medical sources, as well as information concerning the claimant's symptoms and how they affect his or her ability to work. Id. The Social Security Administration has recognized that individuals may experience their symptoms differently and may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings. SSR 16–3p.

Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations identify seven factors which may be relevant to the assessment of the severity or limiting effects of a claimant's impairment based on a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). These factors include: activities of daily living; the location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the type, dosage,

effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her symptoms; treatment, other than medication that a claimant has received for relief; any measures the claimant has used to relieve his or her symptoms; and, any other factors concerning the claimant's functional limitations and restrictions. Id.; see George v. Colvin, No. 4:13–CV–2803, 2014 WL 5449706, at *4 (M.D.Pa. Oct. 24, 2014); Koppenaver v. Berryhill, No. 3:18-CV-1525, 2019 WL 1995999, at *9 (M.D. Pa. Apr. 8, 2019), report and recommendation adopted sub nom. Koppenhaver v. Berryhill, No. 3:18-CV-1525, 2019 WL 1992130 (M.D. Pa. May 6, 2019); Martinez v. Colvin, No. 3:14-CV-1090, 2015 WL 5781202, at *8–9 (M.D. Pa. Sept. 30, 2015).

### E. Substantial Evidence Supports the ALJ's Findings in this Case.

In this setting, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we must simply ascertain whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, Richardson v. Perales, 402 U.S. 389, 401 (1971), and "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Judged against these deferential

standards of review, we find that substantial evidence supported the decision by the ALJ that Ms. Tanner could perform a limited scope of sedentary work and was not disabled.

At the outset, Tanner argues that the ALJ erred in partially discounting her claims regarding the severity of her symptoms. However, guided by the deferential standard of review that applies here, we conclude that these symptom evaluation determinations are supported by substantial evidence. In this regard, we are cautioned that we should "defer[] to the ALJ's assessment of credibility," provided that the ALJ "specifically identif[ies] and explain[s] what evidence he found not credible and why he found it not credible." Zirnsak v. Colvin, 777 F.3d 607, 612–13 (3d Cir. 2014). Likewise, while "statements of the individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them." Chandler, 667 F.3d at 363. In particular, such subjective complaints may be discounted when they are inconsistent with objective medical and opinion evidence. See Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).

That is precisely what transpired here. In this case, the ALJ explained that Tanner's testimony concerning the severity of her symptoms was not entirely credible because it conflicted with objective clinical results, as well as two expert medical opinions—both of which concluded that Tanner retained the ability to

perform some work. Given the deference owed to this credibility determination, that decision, which is supported by substantial evidence, also should not be disturbed on appeal.

Tanner also argues that the ALJ did not sufficiently consider her obesity when making this disability determination. However, in reaching this decision, the ALJ found Tanner's obesity to be a severe impairment and:

> [C]onsidered the claimant's obesity in evaluating her residual functional capacity. Although obesity has been deleted from the listing of impairments . . ., obesity is to be considered in assessing the claimant's functional capacity and its effect on the other impairments (SSR-02-1P). Here, the record reflects that the claimant weighs 328 pounds and stands 5 '4" tall, resulting in a BMI of 58 . . . . The claimant describes symptoms reasonably attributable to her obese state. The undersigned administrative law judge has given due consideration to the claimant's obesity in assessing the claimant's residual functional capacity and, in this case, limiting the claimant to the performance of sedentary work.

(Tr. 18-9.)

The ALJ's decision then discussed and described the various treatment notations that alluded to Tanner's weight and obesity, (Tr. 21-22), but ultimately found that: "Considering the claimant's combination of impairments in conjunction with her obesity, a reduction to a range of sedentary exertion work is appropriate and supported by the record." (Tr. 22.) Simply put, the ALJ's decision in this case began with an acknowledgment that Tanner's obesity was a severe condition, but then

26

discussed the clinical evidence of this obesity and considered that evidence before concluding that Tanner could still perform some sedentary work.

Thus, this is not a case like Diaz, where an ALJ identified the claimant's obesity as a severe impairment but then neglected to address that condition in any meaningful way. Instead, the ALJ's decision in Tanner's case "considered [the] additional and cumulative effects of obesity," when the ALJ conducted a factual analysis of the medical evidence as it related to her obesity and impairments. Cooper v. Comm'r of Soc. Sec., 563 F. App'x 904, 911 (3d Cir. 2014). Further, the ALJ's decision, read as a whole, examined the role of a Tanner's obesity, evaluating it within the context of the overall record. Woodson v. Comm'r Soc. Sec., 661 F. App'x 762, 765 (3d Cir. 2016). Further, the ALJ explicitly stated that she considered Tanner's obesity when assessing her residual functional capacity. Hoyman v. Colvin, 606 F. App'x 678, 680 (3d Cir. 2015). Medina v. Berryhill, No. 3:17-CV-1941, 2018 WL 3433290, at *6–7 (M.D. Pa. June 8, 2018), report and recommendation adopted, No. CV 3:17-1941, 2018 WL 3426408 (M.D. Pa. July 16, 2018). This is all that Tanner can demand of an ALJ in this setting, and since substantial evidence supports the ALJ's evaluation of this medical evidence and the effects of Tanner's obesity on her other impairments, this claim does not warrant a remand of this case.

Finally, Tanner asserts that the ALJ erred by including her use of a cane when formulating hypothetical questions for the vocational expert and when arriving at a residual functional capacity assessment for the plaintiff. In support of her assertion, Tanner cites SSR 11-2p, which provides that:

> When we determine whether a person can do other work that exists in significant numbers in the national economy, we do not consider whether he or she could do so with accommodations, even if an employer would be required to provide reasonable accommodations under the Americans with Disabilities Act of 1990.

SSR 11-2p. Thus, Tanner argues that "[t]he hypothetical question posed by the ALJ was defective because she improperly requested the VE consider accommodations an employer would make for the use of a cane for ambulation." (Doc. 9, at 6-7.)

We believe that this final argument fails because it misconstrues the import of this expert testimony, and confuses an important distinction between legally-mandated ADA accommodations—which may not be considered when making disability determinations—and informal accommodations traditionally made in the workplace, which are permissible factors to take into account when reaching a disability determination.

At the outset, to the extent that Tanner's argument expressly relied upon SSR 11-2p, this Social Security guidance is not directly applicable here since this ruling only extends to young adults, which the agency defines as "people between the ages

of 18 to approximately 25[.]" SSR 11-2p (TITLES II AND XVI: DOCUMENTING AND EVALUATING DISABILITY IN YOUNG ADULTS), 2011 WL 4055665, at *2. Tanner was 31 years old as of her alleged onset date. (Tr. 49.) Therefore, this ruling, which applies only to workers between the ages of 18 and 25, is not directly applicable here.

To be sure, as a general rule "when the SSA determines whether an individual is disabled for SSDI purposes, it does *not* take the possibility of 'reasonable accommodation' [under the ADA] into account, nor need an applicant refer to the possibility of reasonable accommodation when she applies for SSDI." Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 803, 119 S. Ct. 1597, 1602, 143 L. Ed. 2d 966 (1999). Yet, while Social Security disability determinations typically may not be grounded upon an ALJ's belief regarding what the law may require as a reasonable accommodation under the ADA, the fact that many employers, as a matter of custom and practice, make accommodations to their workers is a relevant factor to consider when making this disability determination. Courts have long recognized this distinction between ADA mandates and general industry practices. For example,

> In Jones v. Apfel, the claimant argued that the VE "improperly based his opinion on the [ADA]." 174 F.3d 692, 693 (5th Cir. 1999). The Fifth Circuit stated that "a vocational expert should not base his determination of the availability of jobs on the assumption that the

29

ADA requires an employer to accommodate an individual's disability."
Id. (citing Eback, 94 F.3d at 412). But the VE in Jones had "opined that
specific jobs existed that [the claimant] could perform *and* that would
accommodate [his] need to alternate between sitting and standing." Id.
(emphasis added). When the VE testified that most employers of an
assembly line job will accommodate sitting and standing at will, this
"suggest[ed] ... that allowing for an employee to alter between sitting
and standing is a prevalent accommodation in the workplace." Id. at
694 (citing Eback, 94 F.3d at 412).

These cases merely demonstrate that ALJs may properly rely on VE
testimony that a certain needed modification is part of the functional
workplace. It makes no difference that a particular workplace
modification, such as a bariatric chair, might be called an
"accommodation" or even a "reasonable accommodation." *See* 42
U.S.C. § 12111(9) (defining "reasonable accommodation" for ADA
purposes). The use of the phrase is immaterial. It also makes no
difference that a particular modification or accommodation is offered
because the ADA requires employers to do so. What matters is the
functional workplace as it actually exists. If a particular modification
or "accommodation" has become prevalent and is commonly offered—
whether considered required by the ADA or not—an ALJ may, of
course, consider this evidence in making its determination.

Higgins v. Comm'r, Soc. Sec. Admin., 898 F.3d 793, 796 (8th Cir. 2018). This

distinction between what the ADA may require, and what employers typically will

allow runs throughout the law in this field. Consequently:

Courts have frequently upheld ALJ decisions, which rely on a VE's
determination that certain accommodations are generally allowed by
employers. See Higgins v. Comm'r, Soc. Sec. Admin., 898 F.3d 793,
796 (8th Cir. 2018) ("[t]hese cases merely demonstrate that ALJs may
properly rely on VE testimony that a certain needed modification is part
of the functional workplace. It makes no difference that a particular
workplace modification, such as a bariatric chair, might be called an

'accommodation' or even a 'reasonable accommodation.' "); see also Martin v. Berryhill, No. CV 1:16-3741-SVH, 2017 WL 3446573, at *14-15 (D.S.C. Aug. 11, 2017) (finding that the ALJ did not err when he relied on the VE's testimony to find that jobs would generally accommodate claimant's restriction); Golini v. Astrue, No. 2:10-CV-525, 2011 WL 4409223, at *6 (E.D. Va. Aug. 16, 2011), report and recommendation adopted, No. 2:10-CV-525, 2011 WL 4408789 (E.D. Va. Sept. 20, 2011), aff'd, 483 F. App'x 806 (4th Cir. 2012); (the ALJ correctly used the VE testimony to determine that many light jobs would be able to accommodate the claimant's need to switch between sitting and standing frequently); McElmurray v. Colvin, No. CIV.A. 2:13-189-MGL, 2014 WL 607503, at *3 (D.S.C. Feb. 18, 2014) (ALJ may consider a VE's testimony that certain limitations are, based on their vocational experience, generally accommodated in the marketplace); Harris v. Colvin, No. 3:12-CV-2302, 2013 WL 4517866, at *4 (N.D. Ohio Aug. 21, 2013) ("the VE's response to the ALJ's hypotheticals reflected his professional opinion on common workplace accommodations—not formal accommodations that must be requested under the ADA.").

Hall v. Berryhill, No. 2:18-CV-00302, 2018 WL 8017182, at *14 (S.D.W. Va. Dec. 6, 2018), report and recommendation adopted, No. 2:18-CV-00302, 2019 WL 495586 (S.D.W. Va. Feb. 8, 2019).

In the instant case, we understand the ALJ's hypothetical question, the vocational expert's response, and the ALJ's decision denying benefits all to be premised on the idea that employers will generally allow use of a cane by workers performing certain sedentary jobs. Therefore, nothing about this hypothetical, or the residual functional capacity assessment that flowed from the hypothetical, violated the Commissioner's rules or settled case law defining the interplay between the ADA

and disability determinations. Accordingly, this hypothetical question, standing alone, does not provide grounds for a remand of this decision.

In sum, the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant like Tanner can demand in a disability proceeding. Thus, notwithstanding the argument that this evidence could have been further explained, or might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.'" Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting Hunter Douglas, Inc. v. NLRB, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case. Therefore, we will affirm this decision, direct that judgment be entered in favor of the defendant, and instruct the clerk to close this case.

# IV.   Conclusion

Accordingly,   for the foregoing reasons,   IT IS ORDERED that the final decision of the Commissioner denying these claims is AFFRIMED.

An appropriate order follows.

Submitted this 21st day of May 2019.

/S/ Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge